**883**

The TRIBUNE REVIEW PUBLISHING COMPANY, a Corporation; David W. Mack, Robert Purdy, William Block, Andrew Bernhard, Vince Johnson, James G. Klingensmith and Don Bindyke (Plaintiffs) and P. G. Publishing Company, a Corporation (Intervening Plaintiffs), Appellants,

v.

Howard Bud THOMAS.

No. 12393.

United States Court of Appeals
Third Circuit.

Argued April 18, 1958.

Decided May 13, 1958.

Daniel J. Snyder, Greensburg, Pa., John C. Bane, Jr., Pittsburgh, Pa. (Charles E. Kenworthey, Walter T. McGough, Gilbert J. Helwig, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Fred B. Trescher, Kunkle & Trescher, Greensburg, Pa., on the brief), for appellants.

Paul K. McCormick, H. Reginald Belden, Greensburg, Pa., for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal concerns the validity of Pennsylvania court rules regulating the taking of photographs in and about the courthouse area. The plaintiffs are proprietors and employees of newspapers in Pennsylvania. They sought an injunction against the defendant Sheriff of Westmoreland County in Pennsylvania against the execution of the judgment in contempt proceedings in that County and a declaration that the court order concerning photograph-taking be declared a violation of the Constitution of the United States. The district judge refused the relief requested after keeping the case under advisement during the time in which the plaintiffs tested their rights in the Pennsylvania courts, D.C. W.D.Pa.1957, 153 F.Supp. 486.

The court rule which is subject to attack is that of the Court of Common Pleas of Westmoreland County which reads as follows:

"Taking of Photographs

"(a) No pictures or photographs shall be taken, immediately preceding or during sessions of this court or recesses between sessions, in any of the court rooms or at any place in the court house within forty feet of the entrance to any court room.

"(b) No court proceeding shall be broadcast or televised.

"(c) No pictures or photographs of any party to a civil or criminal action, juror or witness, shall be taken in the Law Library or in any office or other room of the court house, except with the knowledge and consent of the person or persons photographed.

"(d) No prisoner or inmate of the County jail shall be photographed in the jail or on his way to or from a session of court."

There is no doubt that the rule was violated by the plaintiffs who took pictures of a notorious prisoner named Wable who had been convicted of murder in Westmoreland County and who was

being sentenced the day on which the violation of the rule took place.

The plaintiffs attack the rule as a violation of freedom of speech and press enumerated in the first amendment of the Constitution of the United States and protected against state action by the fourteenth amendment. That the fourteenth amendment does give such protection has been declared many times by the Supreme Court. The authorities are listed in the opinion in Joseph Burstyn, Inc., v. Wilson, 1952, 343 U.S. 495, 500, note 8, 72 S.Ct. 777, 96 L.Ed. 1098.

It is pointed out that the Supreme Court has held that dissemination of pictures is protected against interference in the same way that expression by speech is protected. For this is correctly cited the Burstyn case and Superior Films, Inc., v. Department of Education, 1954, 346 U.S. 587, 74 S.Ct. 286, 98 L.Ed. 329.

We, therefore, have our attention called to the free speech decisions by the Supreme Court. The argument is made that only a clear and present danger can justify an abridgment of free speech and that such danger is not present here. Those cases are well summed up in a statement from Mr. Justice Black in Bridges v. State of California, 1941, 314 U.S. 252, 263, 62 S.Ct. 190, 194, 86 L.Ed. 192. He said, "What finally emerges from the 'clear and present danger' cases is a working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished."

The various cases cited by the appellants for free speech all have to do with expression of thought in some form. Over and over again the Court, especially through Mr. Chief Justice Hughes, has pointed out that the struggle for freedom of the press "was primarily directed against the power of the licensor." Lovell v. City of Griffin, 1938, 303 U.S. 444, 451, 58 S.Ct. 666, 669, 82 L.Ed. 949. See, also, Near v. State of Minnesota ex rel. Olson, 1931, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357; Mr. Justice Douglas in the Superior Films case above cited; Grosjean v. American Press Co., 1936, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660. Pennekamp v. State of Florida, 1946, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295, and Craig v. Harney, 1947, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546, both have to do with newspaper comment on pending litigation.

The big jump which the plaintiffs' case takes is from this completely solid foundation regarding freedom of utterance to a super-structure supported by assertion only. They say that since the right to publish photographs of newsworthy subjects is within the ambit of constitutional protection "the right to take such photographs inexorably follows." They do not press the point so inexorably, however, as the unqualified statement would indicate. They grant that a court may prohibit the taking of photographs in the court room. Evidently they do not wish to challenge rule 53 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[1] Nor canon 35, Canons of Judicial Ethics of the American Bar Association.[2] Nor do they deny outright the statement of the district court that the press here has no more right than any other member of the public although they do say that the district judge made more of this than he should have. Judge Fuld speaking for the majority in United Press Associations v. Valente, 1954, 308 N.Y. 71, 123 N.E.2d 777, 778, said of the right of free speech, "That right has, * * * never been held to confer upon the press a constitutionally pro-

1. Fed.R.Crim.P. 53: "The taking of photographs in the court room during the progress of judicial proceedings * * * shall not be permitted by the court."

2. Canon 35: "Proceedings in court should be conducted with fitting dignity and decorum. The taking of photographs in the court room during sessions of the court or recesses between sessions, and the broadcasting of court proceedings are calculated to detract from the essential dignity of the proceedings, degrade the court and create misconceptions with respect thereto in the mind of the public and should not be permitted."

tected right of access to sources of information not available to others."

Realizing that we are not dealing with freedom of expression at all but with rules having to do with gaining access to information on matters of public interest, can it be argued that here there is some constitutional right for everybody not to be interfered with in finding out things about everybody else? We suppose it would not be contended that a newspaper reporter or any other citizen could insist upon entering another's land without permission to find out something he wanted to know. In the same way merely because someone's private letters might be interesting as gossip or as models of English composition it would hardly be argued that one could open another's desk and read through what he finds there. Could an interested observer insist on the constitutional right to take motion pictures of a private family in and about its household contrary to that family's wishes? We think that this question of getting at what one wants to know, either to inform the public or to satisfy one's individual curiosity is a far cry from the type of freedom of expression, comment, criticism so fully protected by the first and fourteenth amendments of the Constitution.

If a judge may, for the purpose of maintaining order and decorum, control the taking of pictures in his own court room it can hardly be successfully argued that his power stops when one closes the court-room door. The Supreme Court of Pennsylvania has declared that the rules here involved are a reasonable exercise of judicial authority in this state. In re Mack, 1956, 386 Pa. 251, 126 A.2d 679. That settles the question so far as concerns the judicial authority under state law.

There is existing authority under Pennsylvania law to make the rules here involved, and there being no interference with any constitutional right to freedom of speech or the press, the judgment of the district court will be affirmed.