328 So.2d 378 (1975)
STATE of Louisiana
v.
Richard ANGELICO.
No. 57150.
Supreme Court of Louisiana.
December 2, 1975.
Writ denied and stay order set aside. The application raises no issues not heretofore disposed of.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents from the denial. On the face of the proceedings, it is apparent that there has been no trial of applicant by a judge of the Criminal District Court of Orleans Parish. Our law, practice and invariable custom is that a trial is conducted by one judge. There is no authority in the statutes or jurisprudence for a trial for constructive contempt of a district court by a committee or jury of judges; C.Cr.P. 24 specifically requires that constructive contempt be tried by "the judge". Defendant has clearly been convicted without due process of law.
CALOGERO, J., agreeing with the court's denial of this writ application, is further of the view that however possibly meritorious the argument that applicant should statutorily have been tried for constructive contempt of the district court's joint order by a single judge rather than the Criminal District Court sitting en banc, such complaint does not support a contention of violation of due process.
TATE, Justice (dissenting).
I respectfully dissent from the denial of this application.
This court has previously refused to consider the relator's application for direct supervisory review of the judgment of contempt, finding that it was filed here 53 minutes late. La., 328 So.2d 164 (1975). We did so without reviewing the merits of the relator's allegations, which included contentions that, under the circumstances, the adjudication of contempt violated his due process and First Amendment rights. Even today, the court has not reviewed the factual merits of his complaint of discriminatory treatment, since we have not sought or been furnished a transcript of the evidence, which upon proper showing (as here) we should order. See Rules of Louisiana Supreme Court, Rule 10, Section 5(a)(10)(1973).
*379 By reason of La.C.Cr.P. art. 362(9), the relator is entitled to collateral review by post-conviction habeas writ as a person in custody "by virtue of a court order", under a claim he is so held by deprivation of a constitutional right. I find that, under the showing made, his allegations have merit and that he should be granted hearing as to his claims.
For present purposes, I limit my dissent to the following showing: The criminal district court issued an order, which, inter alia, prohibited the operation of cameras "in the halls of the Criminal Courts Building" and prohibited questioning of interviewing grand jury witnesses "within the courts or hallways of the Criminal Courts Building." Orders 3(b), 4(b) March 4, 1974.
The relator, a television newsman, was convicted of contempt because he conducted a television interview of a grand jury witness as she was wheeled (by wheelchair) into and along a motor vehicle driveway running the length of the basement of the building. Concededly, the motor vehicle driveway might be within the technical definition of a "hall" or "hallway" ("the entrance room or passageway of a residence or other building", "a corridor or passage in a building", Webster's Third New International Dictionary, verbo "hall", P. 1023 (1961)), but the term connotes in ordinary American usage an interior corridor within the building rather than an exterior motor driveway.
Despite Dorfman v. Meiszner, 430 F.2d 558 (CA 7, 1970), cited to us by the applicant, I have little doubt but that the criminal district court has the power reasonably to protect the integrity of its grand jury proceedings and the privacy of persons there summoned against their will by orders forbidding photographing or interviews within the courthouse or on the property thereof, including within the motor vehicle driveway here at question.
Insofar as applying to the motor vehicle driveway, however, the order is vague and ambiguous. A conscientious citizen, intending to obey the order (as applicant claims he was), might interview and take pictures in the vehicular driveway, in the reasonable belief that the order's prohibition referred only to interior hallways.
A regulation with penal consequences should be sufficiently explicit to inform those subject to it what conduct will render them liable for penalties. A regulation so vague that men of common intelligence must guess at its meaning and differ as to its application prevents penalty for violation of the penumbra area of ambiguity, as a violation of due process.
See: Connally v. General Construction, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 Pa.L. Rev. 67 (1960).
Statutes or orders which inhibit exercise of sensitive First Amendment rights of the free press and of free speech are especially required to be specific in their regulation. See, e. g., Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) and Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).
Under this showing, the relator was held to be in contempt and jailed for violation of an order which was vague and imprecise as to the violation claimed. His jailing under the circumstances violates due process and infringes on First Amendment rights. I do not reach the further contention that his "violation" was subjected to prosecution because displaying an interview with a witness at great variance with a well-publicized official version of the crime charged, while "violations" of newsmen in the past were not so prosecuted.
For the reasons assigned, therefore, I respectfully dissent.