UNITED STATES of America

v.

John F. CICILLINE.

Crim. No. 83–037–02S.

United States District Court, D. Rhode Island.

Sept. 12, 1983.

Edwin J. Gale, Spec. Atty., U.S. Dept. of Justice, Lincoln C. Almond, U.S. Atty., Providence, R.I., for the Government.

Joseph Balliro, Boston, Mass., John Sheehan, Providence, R.I., for defendant Cicilline.

William Kunstler, New York City, Edward Romano, Providence, R.I., for defendant Marrapese.

Joseph L. DeCaparole, Providence, R.I., for defendant Scivoli.

## OPINION

SELYA, District Judge.

Defendant (John F. Cicilline) has moved to suppress as evidence in the criminal case against him a tape recording of a conversation between Cicilline and a prospective trial witness (William G. Smith) obtained on January 21, 1983 at the United States Courthouse, Providence, Rhode Island. Defendant bases his motion on Rule 43(a) of the Local Rules of the United States District Court for the District of Rhode Island ("Local Rule 43(a)"), which, *inter alia,* prohibits the making of recordings or broadcasts in the course of or in connection with any court proceedings or on any floor of the building in which this court's sessions may be held.

The facts relevant to this motion are susceptible to succinct summary. Cicilline was trial counsel for co-defendant Marrapese in the case of *United States v. Marrapese,* CR. No. 82–49 (D.R.I.). During the course of that trial, Marrapese allegedly contacted Smith regarding the possibility of providing testimony in support of Marrapese's alibi. On January 20, 1983, Smith was allegedly invited to defendant's law office to discuss his hoped-for testimony with defendant and with Marrapese. Smith went to the office. The government alleges that during the course of the evening, Smith was directed to provide false testimony at the trial (which was then in progress). Smith had, however, contacted government agents before meeting with Cicilline and Marrapese, and had been, it is asserted, utilizing a body recorder when he sojourned to Cicilline's office.[1]

Subsequent to that meeting, Smith met with a Special Attorney, United States Department of Justice, and with several spe-

---

1. Motions to suppress the January 20th tape have previously been argued and denied; thus, that recording is not directly implicated by the pending motion.

cial agents of the Federal Bureau of Investigation ("FBI"). With Smith's consent, it was agreed that he would spend the night at his home in the company of FBI agents who would provide Smith and his family with security. It was further agreed that, prior to departing his home on January 21, 1983, he would again don a body recorder to enable him to record, if possible, further conversations which he might have with the defendant or with others involved in the allegedly ongoing attempt to suborn perjury. As he had been directed, Smith arrived at the Courthouse at approximately 11:00 a.m. on January 21, 1983, at which time he met with Cicilline and had further conversations with him. Thereafter, over the next four hours or so, Smith remained in the Courthouse and occasionally spoke with the defendant. Smith was able to record only one of these conversations. He did so in a third-floor area proximate to two regularly-utilized courtrooms (in one of which Marrapese's trial was being heard). It is that tape which is the subject of this motion.

> Local Rule 43(a) provides:
>
> Except as specifically provided in these rules, no person shall take any photograph, make any recording, or make any broadcast by radio, television, or other means in the course of or in connection with any proceeding in the court, on any floor of any building on [sic] which proceedings of this court are, or in the regular course of the business of the court may be, held.

Defendant claims that by equipping Smith with a body recorder and directing him to record any conversations which he might have with the defendant at the Courthouse on January 21, 1983, the government violated Local Rule 43(a). Defendant therefore seeks suppression of both the interdicted tape recording of the January 21 conversation and all evidence derived directly or indirectly therefrom; defendant further urges the exclusion from evidence of

Smith's testimony as to all conversations purportedly held with the defendant at the Courthouse on the date in question.

Whether Local Rule 43(a) is applicable to the tape recording at issue here is a question of first impression for this court.[2] Superficially, the recording falls within the plain language of the rule: the rule prohibits any person from making any recording in the course of or in connection with a proceeding in this court on any floor of the building in which court proceedings may be held. Smith made the recording while the case (*United States v. Marrapese*) was being tried and he made that recording on a floor of the building in which court proceedings were being held. Yet, the tenor of Rule 43(a) is such that a strong inference arises to the effect that its natural and primary purpose is to prevent members of the press and broadcast media from interfering with the business of the court and with the right to a fair trial. Although there is no idiosyncratic historical record spelling out the aims underlying the adoption of Local Rule 43(a), it is patently patterned after Rule 53 of the Federal Rules of Criminal Procedure, adopted in 1946. Wright, § 861 at 345. Rule 53 provides:

> The taking of photographs in the court room during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the court room shall not be permitted by the court.

In 1962, the Judicial Conference of the United States adopted the following resolution regarding Fed.R.Crim.P. 53:

> Resolved, That the Judicial Conference of the United States condemns the taking of photographs in the courtroom or its environs in connection with any judicial proceedings, and the broadcasting of judicial proceedings by radio, television, or other means, and considers such practices to be inconsistent with fair judicial procedure

---

**2.** A number of courts have adopted similar rules, C. Wright, 3A *Fed. Practice and Procedure* § 861 at 346 (1982) ("Wright at ———"), but neither party has pointed to any analogous cases decided under these rules, and this court has found none in its independent research.

and that they ought not to be permitted in any federal court.

1962 Jud.Conf.Rept., p. 10, *reprinted in* Wright, § 861 at 345 ("1962 Resolution"). The Supreme Court, in *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), lent approbation to the policy considerations which lie at the core of both Fed.R. Crim.P. 53 and the 1962 Resolution. In *Estes,* the Court held that a defendant had been denied due process by the televising of his notorious, heavily publicized, and highly sensational criminal trial. *Estes,* and a subsequent case, *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), together stand for the proposition that the right to a fair trial may well demand the absence of a crush of reporters and the accouterments of the broadcasting trade from the courtroom and its immediate surroundings. "Thus, the law not only allows but compels the courts to insure that judicial proceedings are conducted in an orderly, solemn environment free from the interferences which so often accompany modern news coverage of the events." *Dorfman v. Meiszner,* 430 F.2d 558, 561 (7th Cir.1970). The courtroom, in effect, should be a safe harbor, insulated where (and to the extent) necessary both from tidal waves of publicity and from the distractions inherent in the tools of the news media trades.

The Judicial Conference revised its guidelines beginning in 1976, and in 1980 recommended that each district adopt the following model rule:

> The taking of photographs and operation of tape recorders in the courtroom or its environs, and radio or television broadcasting from the courtroom or its environs during the progress of or in connection with judicial proceedings, including proceedings before a United States Magistrate, whether or not court is actually in session, is prohibited. A judge may, however, permit (1) the use of electronic or photographic means for the presentation of evidence or the perpetuation of a record, and (2) the broadcasting, televising,

recording, or photographing of investitive, ceremonial, or naturalization proceedings.

*Recommendation Relating to the Use of Photography, Radio, Television Equipment, and Tape Recorders in the Courtroom and Its Environs,* 87 F.R.D. 519, 535–36 (1980) ("1980 Recommendation").[3] The following year, however, the Supreme Court limited *Estes* to its own facts, and interpreted it as holding only that what had been done in that case had infringed the defendant's right to the fair trial guaranteed by the Due Process Clause. *Chandler v. Florida,* 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981). *Estes* had not, the Court announced, proclaimed a constitutional rule of general application barring photographic, radio and television coverage in all cases and under all circumstances, *id.* at 570–74, 101 S.Ct. at 807–809; and, in *Chandler,* the Court abjured the adoption of such a *per se* rule. Absent a showing of prejudice to a particular defendant in a particular case, the Constitution does not prohibit a state from allowing criminal trials to be televised if the state wishes to do so. *Id.* at 574–583, 101 S.Ct. at 809–814. On the other hand, however, such publicity is not constitutionally required. *Id.* at 569–70, 101 S.Ct. at 807. And, Rule 53, coupled with the 1962 Resolution and subsequent pronouncements of Judicial Conference, continue to foreclose broadcasts or telecasts of federal criminal trials.

Both the 1962 Resolution and the 1980 Recommendation are more encompassing than Fed.R.Crim.P. 53; and Local Rule 43(a), in turn, is broader than the 1962 Resolution (as it bars recording and broadcasting, whereas the 1962 resolution condemns only broadcasting). In point of fact, Local Rule 43(a) is very similar to the final version of the 1980 Recommendation. Both prohibit the operation of tape recorders in the courtroom in connection with judicial proceedings, except for the perpetuation of a record. The differences are both minor and explicable: the 1980 Recommendation,

---

**3.** Local Rule 43(a) antedates the 1980 Recommendation, having originally been adopted in substantially its present form on September 27, 1971 and recodified on July 1, 1978.

for example, bars recording in the "environs" of a courtroom, while Local Rule 43(a) applies to "any floor of any building" in which judicial business is or may be regularly conducted. This distinction does not appear significant. Rather, it is self-evident that the wording of the Local Rule is meant to conform with (i) the holding of *Dorfman v. Meiszner,* 430 F.2d at 561, wherein the Seventh Circuit ruled that a local rule which prohibited the taking of photographs or broadcasting on floors where there were no courtrooms, and from the large lobby and public plaza of the federal courthouse, was broader than necessary to maintain the integrity of judicial proceedings, *id.* at 561–62; and (ii) the configuration of the particular Courthouse in which the judicial business of this District is routinely conducted.

Likewise, the difference between "during the progress of or in connection with" as specified in the 1980 Recommendation and "in the course of or in connection with" contained in Local Rule 43(a) are insignificant. It seems obvious that the language in both is meant to reach and to proscribe an identical set of actions. Thus, the Fifth Circuit upheld the contempt conviction of a television news photographer who, in violation of a local court rule patterned after the 1962 Resolution, took television photographs of a defendant and his attorney in the hallway outside a courtroom as the defendant was being led from the courtroom at the conclusion of his arraignment proceedings. *Seymour v. United States,* 373 F.2d 629, 630 (5th Cir.1967), cited with approval in *Committee Comment to 1980 Recommendation,* 87 F.R.D. at 536.

■ From the substantial family resemblance between Local Rule 43(a) and the 1980 Recommendation,[4] and from the ease with which the ancestry of the local rule can be traced to Fed.R.Crim.P. 53 and to the 1962 Resolution, the court can infer a unitary purpose: the maintenance of an orderly, dignified environment, free from ancillary distractions, for the solemn con-

duct of judicial proceedings. *See Dorfman v. Meiszner,* 430 F.2d at 561. The photographing or broadcasting of judicial proceedings by radio, television, or other means would be inconsistent with that purpose. *Committee Comment to 1980 Recommendation,* 87 F.R.D. at 536.

■ As the scope of a rule is governed by its purpose, *see D'Ambra v. United States,* 396 F.Supp. 1180, 1183 (D.R.I.1973), *aff'd,* 518 F.2d 275 (1st Cir.1975), the court concludes that the tape recording currently at issue is beyond the intended reach of Local Rule 43(a). This recording was not made "in the course of or in connection with" a judicial proceeding as contemplated by the local rule. It was not obtained as part of an effort to cover the Marrapese trial for the press or for personal publicity. Rather, it was secured in the course of an ongoing criminal investigation of an alleged conspiracy to corrupt and to pervert the judicial system. A recording made for that purpose cannot be said to interfere with the goal of Local Rule 43(a), nor to penetrate the safe harbor provided by the rule in a fashion sufficient to invoke the prophylaxis of Local Rule 43(a). Acceptance of the defendant's argument, on the facts before the court, would distort the fundamental intendment of the local rule.

This is not to say that any surreptitious recording in the Courthouse would or should be allowed. But, in these peculiar circumstances, where the integrity of the judicial system itself was apparently at stake, the court would be elevating form over substance were it to hold that Local Rule 43(a) barred the present recording. Such a hypertechnical result would defy all logic and would make mock of the processes of justice.

■ Rule 3(a) of the Local Rules provides in material part that each and all of the rules "shall be construed ... to secure the just ... determination of all proceedings before the court." The extension of Local Rule 43(a) beyond its natural boundaries, as

---

4. A resemblance which, in the court's view, is relevant despite the fact that Local Rule 43(a)

was a forerunner, rather than a descendant, of the 1980 Recommendation (see n. 3, *ante*).

urged by Cicilline, would fly in the face of this monition. And, even if the language of Local Rule 43(a) permitted of no construction other than that advanced by the defendant—a conclusion which this court rejects, *see* text *ante*—, the court is nonetheless empowered under Local Rule 2(b) to forestall the manifest injustice which would then otherwise result.[5] The case at bar is prototypical of the sort of "exceptional circumstances" which trigger recourse to Local Rule 2(b); and, as an alternative ground for this ruling, the court specifically finds that the circumstances and the interests of justice require that Local Rule 43(a), to the extent (if at all) that it outlaws the investigatory technique employed here by the government, be suspended in this instance.[6]

██ Since the court has discerned no violation of Local Rule 43(a), it is unnecessary to reach Cicilline's further contentions as to the drastic remedies which he perceives should be invoked. Suffice it to say that the defendant's attempt to analogize inadvertent non-compliance with a local rule to direct violation of a discovery order or to wilful disregard of a sequestration order is puerile. The suggested similitude *requires* a comparison of apples with oranges, and is inherently specious. Moreover, even in such exacerbated instances, suppression of evidence or disqualification of a witness does not automatically follow; rather, "the appropriate sanction is left to the sound discretion of the district court." *United States v. Arruda,* 715 F.2d 671 at 684 (1st Cir.1983).

For the foregoing reasons, defendant's motion to suppress and exclude evidence by way of sanction is denied.

*So ordered.*

---

**5.** Local Rule 2(b) provides:
   If the court determines that exceptional circumstances would make the application of any of these Rules to a particular proceeding unjust, it may suspend such Rules.

**6.** While it might have been the option of choice for the government to have sought an *ex parte*

order, *in camera* and under seal, from a judge of this court prior to bringing the electronically-attired Smith to the Courthouse, the failure to do so should not, in this unusual situation, deter the court from acting *nunc pro tunc* in pursuance of Local Rule 2(b).