**COMBINED COMMUNICATIONS CORPORATION, d/b/a KBTV Broadcasting, Inc., Petitioner,**

v.

**Honorable Sherman G. FINESILVER, United States District Judge, Respondent.**

**No. 81–2279.**

United States Court of Appeals, Tenth Circuit.

March 17, 1982.

· Richard P. Holme, Denver, Colo. (Andrew M.·Low, Denver, Colo., with him on the brief), Davis, Graham & Stubbs, Denver, Colo., for petitioner.

William C. McClearn, Denver, Colo. (Peter C. Houtsma and Maureen E. Reidy, Denver, Colo., with him on the brief), Holland & Hart, Denver, Colo., for respondent.

Before DOYLE, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Petitioner Combined Communications Corporation, d/b/a KBTV Broadcasting, Inc. (KBTV), seeks a writ of mandamus requiring a district judge to allow television broadcast coverage of negotiations undertaken in a Federal courthouse to settle a lawsuit. We deny the petition.

## I.

### Factual Background

As a result of the 1980 census, the number of members the State of Colorado may elect to the United States House of Representatives increased from five to six. Three redistricting plans formulated by the Colorado General Assembly to create six Congressional districts were vetoed by Governor Richard Lamm. Thereafter, five registered voters brought suit against the governor and other state officials requesting that a three-judge court be appointed to formulate its own redistricting plan in time for the 1982 Congressional election.

The case was assigned to respondent Judge Finesilver who ordered the governor and members of the legislature to attempt to work out a compromise plan. Pursuant to that order, the negotiators were directed to report their progress to the court at 7:30 a.m. on November 6, 1981, and "[i]n the event no compromise is forthcoming, the parties are to be prepared to spend the entire day, if necessary, in meetings in a designated room of the United States Courthouse to continue discussions on this matter." Oct. 29, 1981 Order at 2. When the negotiators reported the lack of progress at the appointed time, they were directed to a jury room and ordered to continue their efforts. Later in the day, negotiations continued in a magistrate's courtroom. The negotiations were unsuccessful, no other meetings were held, and the matter went to trial December 3, 1981.

The trial court permitted the press to be present during the negotiations held in the courthouse. However, it denied KBTV's request that television cameras be allowed in the meeting rooms, citing a court rule prohibiting such cameras in the courthouse.[1] This denial is the subject of KBTV's mandamus action. KBTV contends that the district court's ruling violated KBTV's First Amendment right of access to news of the operation and activities of government and the Colorado Open Meetings Law, Colo.Rev. Stat. § 24–6–401 et seq. On the other hand, respondent argues that KBTV lacks standing, that the issue is moot, and that the ruling did not violate either the First Amendment or the Colorado statute.

## II.

### Jurisdictional Issues

■ In order to have standing, KBTV must allegedly be injured in fact with respect to an interest within the zone of protection of the Constitution or a statute. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152–54, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184 (1970). KBTV has arguably suffered an injury regarding its ability to report the news that is within the protection of the First Amendment. See *Cable News Network, Inc. v. American Broadcasting Co.*, 518 F.Supp. 1238, 1244–45 (N.D.Ga.1981). Accordingly, KBTV's standing to assert its claims is established. *See United States v. Gurney*, 558 F.2d 1202, 1206 (5th Cir. 1977), cert. denied, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978).

■ Whether KBTV's claims are moot is a closer question. An issue will not be considered moot although the controversy generating it has dissolved if two conditions are present: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Napier v. Gertrude*, 542 F.2d 825, 826 (10th Cir. 1976), cert. denied, 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed.2d 765 (1977).

■ Respondent concedes that the first requirement is present. However, he ar-

---

1. Rule 16 of the Local Rules of Practice for the Colorado District Courts provides in pertinent part:

   "[T]he use or operation of any camera, recording device, or other mechanical means for the visual reproduction of the likeness of an individual or object, or for the auditory reproduction of a voice or sound, is prohibited in the United States Courthouse, Denver, Colorado."

gues that the circumstances giving rise to this case are so unique that no reasonable expectation of repetition exists. Respondent's burden on this issue is a heavy one. *United States v. W. T. Grant & Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). KBTV contends that statutorily open meetings may well be held again in the federal courthouse and its television cameras subsequently barred under the court's ruling. This possibility is not so remote and speculative that the controversy must be considered moot. *See, e.g., Gannett Co. v. De Pasquale*, 443 U.S. 368, 377–78, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979).

### III.

### *The Merits*

■ KBTV contends that the court's ruling violated both its First Amendment right to gather news and the Colorado Open Meetings Law. The interrelation of the media, the First Amendment, and the courts' duty to provide a suitable environment for judicial proceedings has generated considerable controversy. Although many issues remain unsettled, some principles have emerged. The First Amendment does not guarantee the media a constitutional right to televise inside a courthouse. *See Gannett Co. v. De Pasquale*, 443 U.S. at 381, 99 S.Ct. at 2906; *Estes v. Texas*, 381 U.S. 532, 539–40, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543 (1965). Within the courthouse, " 'a reporter's constitutional rights are no greater than those of any other member of the public.' " *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609, 98 S.Ct. 1306, 1317, 55 L.Ed.2d 570 (1978) (quoting *Estes*, 381 U.S. at 589, 85 S.Ct. at 1663 (Harlan, J., concurring)). "[T]he courtroom and courthouse premises are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358, 86 S.Ct. 1507, 1519, 16 L.Ed.2d 600 (1966), and courts may impose restrictions upon media access to courtrooms and courthouse premises when necessary to protect and facilitate the proper administration of the judicial system. *See Mazzetti v. United States*, 518 F.2d 781, 782–83 (10th Cir. 1975).

■ In the case before us, respondent refused to allow television cameras into the meetings because of Local Rule 16, *supra* note 1. We need not consider whether application of this rule under different circumstances could infringe upon media First Amendment rights. *See Mazzetti*, 518 F.2d at 783. We conclude that it did not do so in this case.

KBTV was not denied access to the meetings. Its representative was free to attend, take notes, and disseminate any information obtained. The room in which the morning meeting was held was small and space was limited. Jury trials were taking place elsewhere in the courthouse. Under these circumstances, the potential for disruption of the meeting and other judicial proceedings outweighed any benefit to KBTV and the public from a visual presentation of the meeting room.

KBTV understandably relies on *Cable News Network v. American Broadcasting*, 518 F.Supp. 1238, 1245–46 (N.D.Ga.1981), in which the court held that total denial of television coverage of press conferences in the White House violated the First Amendment interests of the public and the press notwithstanding that reporters were permitted to attend. However, the Supreme Court has clearly rejected this position in the context of the courthouse. *See Nixon*, 435 U.S. at 609–10, 98 S.Ct. at 1317–1318; *Estes*, 381 U.S. at 539–42, 85 S.Ct. at 1631–1632.

That the meetings were arguably subject to the Colorado Open Meetings Law is irrelevant to our determination. The meetings were conducted in the courthouse pursuant to a court order in an attempt to effect the settlement of a matter in litigation in federal court. The meetings were thus under the control of the judge and were subject to restrictions necessary to ensure that the work of the court was not disturbed. In any event, the spirit of the open meeting law was not violated because reporters from the media were permitted to attend.

Petitioner has failed to establish a right to the writ of mandamus. The petition is denied.