Jack GERRITSEN, Plaintiff,

v.

Javier ESCOBAR y CORDOVA, et al., Defendants.

No. CV85–5020–PAR (KX).

United States District Court, C.D. California,

June 23, 1988.

Jack Gerritsen, Monterey Park, Cal., in pro per.

Robert C. Bonner, U.S. Atty., Stephen Petersen, Asst. U.S. Atty., Los Angeles, Cal., Vincent M. Garvey, Richard C. Stearns, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

Alberto Szekely, Mexico City, United Mexican States, Eduardo de–Ibarolla, Los Angeles, Cal., for defendant Consulado General de Mexico.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

Plaintiff in his latest (December 23, 1987) complaint [1] charges various individual and government defendants with violation of numerous constitutional, federal statutory, and state common law rights. These claims arise primarily out of plaintiff's protests over a period of years in El Pueblo De Los Angeles State Historic Park against certain Mexican government policies and the alleged response of the defendants to those protests. An earlier complaint against the United Mexican States and its officials was dismissed by this court for lack of subject matter jurisdiction under 28 U.S.C. § 1343; a claim against president Hurtado was dismissed with prejudice. Plaintiff appealed the jurisdictional ruling. In *Gerritsen v. Hurtado*, 819 F.2d 1511 (9th Cir.1987) the Ninth Circuit upheld the court's ruling on § 1343, but—believing that plaintiff was denied leave to amend—suggested other possible sources of jurisdiction and remanded the case to this court.

Plaintiff filed his latest complaint on December 23, 1987. He also filed a Preliminary Statement of Pre–Trial Contentions of Fact that identifies which claims are alleged against each defendant and the alleged facts upon which the claims are based. Jurisdiction is based on the following sources: the First, Ninth, and Fourteenth Amendments to the United States Constitution; federal statutes 18 U.S.C.

§ 1962 ("RICO"), 28 U.S.C. § 1351 (actions against consuls and vice consuls), 28 U.S.C. § 1330(a), 1602–11 (Foreign Sovereign Immunities Act), and 42 U.S.C. § 1983 (deprivation of civil rights under color of law); diversity jurisdiction (28 U.S.C. § 1332); and the treaty "Multilateral Convention To Prevent and Punish the Acts of Terrorism Taking the Form of Crimes Against Persons and Related Extortion," *opened for signature* February 2, 1971, 27 U.S.T. 3950, T.I.A.S. No. 8413.

The United Mexican States moves the court to reconsider its original ruling that it may not appear pro se; it also moves, along with the individual Mexican defendants, to dismiss the complaint.

*Motion for Pro Se Status*

This court in its February 19, 1986 ruling held that under Local Rule 2.9.1 the United Mexican States could not represent itself. The UMS now moves the court to reconsider its earlier ruling. It argues that the Federal Sovereign Immunities Act implicitly permits pro se representation by foreign governments in actions against them and therefore Local Rule 2.9.1 should not be interpreted to restrict representation by foreign states.

This court's ruling was not appealed by the Mexican government. In *Gerritsen v. Hurtado*, 819 F.2d 1511, 1514 n. 3 (9th Cir.1987) the court stated that the UMS had a right under neither the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. 6820, 596 U.N. T.S. 261, nor the Consular Convention, August 12, 1942, United States–Mexico, 57 Stat. 800, T.S. No. 985 to represent the defendants pro hac vice at oral argument. Even assuming that this decision also applies to Local Rule 2.9.1 (instead of just reflecting that the pro se ruling was not appealed and the UMS was therefore not a party to the appeal), the present argument by the UMS is based on the Foreign Sovereign Immunities Act instead of the treaties

---

1. Some confusion exists because plaintiff's October 16, 1987 complaint and his December 27, 1987 complaint are both styled his second amended complaint. All references in this order to the second amended complaint or to "plaintiff's complaint" will refer to the December 27, 1987 complaint unless explicitly noted otherwise.

discussed by the Ninth Circuit. Moreover, in its present motion the UMS merely wishes to represent itself; its employees are representing themselves pro se. The court therefore finds nothing in the Ninth Circuit's rulings in this case—or in other cases, *see, Dupree v. United States of America,* 559 F.2d 1151 (9th Cir.1977) (Mexican consulate cannot represent Mexican *individuals* in United States courts)— that forecloses it from reconsidering its earlier decision.

■ In its initial ruling, the court reflexively applied Local Rule 2.9.1 to the UMS. Federal district courts, however, have very wide discretion when interpreting their local rules. *Lance, Inc. v. Dewco Services, Inc.,* 422 F.2d 778, 784 (9th Cir.1970).[2] Arguably, this local rule does not apply to foreign states. It states: "A corporation or unincorporated association may not appear in any action or proceeding pro se." A foreign state is not a corporation. And while the UMS may technically be an "unincorporated association," that phrase also literally applies to the United States of America and the City of Los Angeles—entities that are not within the ambit of Local Rule 2.9.1. As defendants note, sovereign states obviously differ in fundamental ways from other associations and entities. One important difference is that the doctrine of comity applies to relations between sovereigns. Abraham Sofaer, Legal Adviser to the Department of State, informs this court that the United States foreign ministries in Mexico can assert immunity on behalf of the United States before Mexican institutions. Sofaer Decl. ¶ 3. While not a conclusive factor, this suggests that this court should not, if possible, apply the Local Rule to Mexico.

■ Furthermore, district courts derive their authority to promulgate Local Rules from 28 U.S.C. § 2071 and Fed.R.Civ.P. 83. Consequently, local rules must "be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." 28 U.S.C. § 2071. Many courts have viewed "consistency" in a broad light, and hold that local rules must not impede the policies behind statutes as well as avoiding outright contradiction. *See, McKinney v. Dole,* 765 F.2d 1129, 1135 n. 12 (D.C.Cir.1985) ("principles of the federal rules must ultimately prevail"); *Williams v. United States District Court,* 658 F.2d 430, 435 (6th Cir.1981) (holding that local rules may not frustrate federal policies); *McCargo v. Hedrick,* 545 F.2d 393, 401 (4th Cir.1976) (holding that local rule which violated Fed.R.Civ.P. 16's policy of simplicity is void). Accordingly, this court in interpreting Local Rule 2.9.1 will exercise its discretion so as to harmonize the Local Rule with the policies behind relevant Acts of Congress.

■ It has long been the practice in the federal courts that ambassadors may represent their states in claims against them. *See, e.g., Compania Espanola de Navegacion Maritima v. The Navemar,* 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667 (1938) (Spanish ambassador's "application to be permitted to appear and present the claim was properly entertained by the district court"); *Berizzi Bros. Co. v. The Pesaro,* 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088 (1926) (Italian ambassador permitted to appear on

---

**2.** Indeed, a split of authority exists over whether an individual district judge can flatly contradict a local rule in exceptional circumstances. *See,* 12 Wright & Miller, Federal Practice and Procedure: Civil § 3153 at 224 (1973); Note, Rule 83 and the Local Federal Rules, 67 Colum.L.Rev. 1251, 1264 n. 70 (1967) (citing cases on both sides of issue). The Ninth Circuit explicitly left this issue open in *Lance v. Dewco,* 422 F.2d 778, 783–84 (9th Cir.1970): "We do not decide that under no circumstances would a Local Rule be treated as having binding effect upon the court which issued it." *But cf., Hayden v. Chalfant Press, Inc.,* 281 F.2d 543, 545 (9th Cir.1960) (stating in dicta that it is within the discretion of the district court whether it follow a Local Rule in its particular court). The weight of authority in other circuits appears to view Local Rules as binding unless they explicitly state that individual judges may modify them. *See,* Wright & Miller, *supra; United States v. Yonkers Board of Education,* 747 F.2d 111, 112 (2nd Cir.1984) ("–Accordingly, they are binding on the district court judges until properly amended or repealed."). Because this court can reasonably interpret Local Rule 2.9.1 to not include foreign governments, it does not reach the issue whether an individual district judge can ignore a local rule in certain circumstances.

behalf of Italy). Consuls under modern international law possess a similar diplomatic status. *See, Heaney v. Government of Spain*, 445 F.2d 501 (2d Cir.1971) (discussing the Vienna Convention on Consular Relations); *but see, Lucchino v. Foreign Countries*, 631 F.Supp. 821, 827 n. 3 (E.D.Pa.1986) (Consul General of Mexico for Philadelphia could represent UMS in motion to dismiss because of defective service, but would need to hire local counsel if suit proceeded.)

Nothing in the language of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–11, suggests that it was meant to change this practice of allowing diplomatic representation; the main purpose of the Act was to transfer determinations of immunity from the executive to the judicial branch of the federal government. 28 U.S. C. § 1602. The United States claims that allowing foreign states to represent themselves will further this purpose by encouraging foreign states to appear in district court. Sofaer Decl. at ¶¶ 4–5. When interpreting a statute, it is appropriate for the district court to consider the purpose of the statute and the circumstances of its passage. *United States v. Curtis*, 611 F.2d 1277, 1280 n. 1 (9th Cir.1980) (quoting *United States v. Anderson*, 76 U.S. (9 Wall.) 56, 65–6, 19 L.Ed. 615 (1869)). Therefore, because foreign states differ in fundamental ways from other unincorporated associations, and because the policies of the FSIA are best served by allowing pro se status, this court will allow the UMS to represent itself in this proceeding.

Plaintiff argues, however, that he has not sued the United Mexican States, and thus they cannot represent any of the parties in this action. Plaintiff, however, does bring numerous claims against the the Consulate General of Mexico. Complaint ¶ 8. In *Gray .v. The Permanent Mission of the People's Republic of the Congo to the United Nations*, 443 F.Supp. 816, 820 (S.D. N.Y.1978), *aff'd*, 580 F.2d 1044 (2d Cir. 1978) the court examined the legislative history of the FSIA and determined that a diplomatic mission was the foreign state itself. Although that case involved the Congo's mission to the United Nations

rather than a consulate, that distinction is not important. First, the legislative history of the FSIA states that *consular* and diplomatic buildings are those of the foreign state itself. 1976 U.S.Code Cong. & Admin.News pp. 6604, 6628 (emphasis added). Second, under current international law consulates are not viewed as mere commercial adjuncts, but possess many of the same rights and powers traditionally accorded diplomatic missions. *Heaney v. Government of Spain*, 445 F.2d 501 (2d Cir.1971) (Friendly, C.J.).

Language in *Gerritsen v. Hurtado*, 819 F.2d at 1517 is taken by plaintiff to mandate a different result because it states that the Mexican Consulate is a "separate legal person." *See also, Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1021 (9th Cir.1987). The main holding of both these cases, however, is that claims against consulates are governed by the FSIA. Indeed, *Gerritsen*, 819 F.2d at 1517 cites *Gray v. Congo*, 443 F.Supp. at 819 as support for its position. The dicta referring to the consulate as a separate legal person therefore does not appear relevant to this issue. The court therefore finds nothing in either case that mandates that this court, in the context of the representation issue, may not consider claims against the Consulate General of Mexico as also being claims against the UMS.

Nonetheless, I wish to remind all parties in this case that the court will hold pro se litigants to the same professional standards that it expects from attorneys appearing before it. The retention by both plaintiff and defendants of an experienced local attorney to act as co-counsel will help insure that all the local rules and other procedural hurdles are met.