# KEITHLEY EDWARDS and EDITH EDWARDS

## v.

# GERALD THOMAS GRONER and JOEL HOLT

Civil Action No. 279/1986

District Court of the Virgin Islands

Div. of St. Croix

February 23, 1989

RANDALL SCOTT JOHNS, ESQ., St. Croix, V.I., *for plaintiffs*

GORDON RHEA, ESQ., St. Croix, V.I., *for defendants*

McGLYNN, *J.*

## MEMORANDUM OF DECISION

What began as a relatively routine legal malpractice action has degenerated into a tangled web of post-judgment motions concerning both the propriety of the judgment and the conduct of the plaintiffs' attorney, Randall Scott Johns. The malpractice case was dismissed by Chief Judge David v. O'Brien upon the plaintiff's failure to appear for trial on April 11, 1988. On that same date, Judge O'Brien served upon Mr. Johns, in open court, a Rule to Show Cause why sanctions under Fed. R. Civ. P. 11 should not be imposed for his conduct during the litigation. Judge O'Brien recused himself and the entire case was transferred to this writer for disposition of the remaining motions.

The attorneys representing the defendants in the legal malpractice action have filed motions seeking sanctions under Rule 11 against Mr. Johns as well as requests for attorneys' fees pursuant to 5 V.I.C. § 541. For his part, Mr. Johns seeks Rule 11 sanctions against Mr. Gordon Rhea, attorney for defendant Groner and, in addition, seeks relief from the judgment of dismissal entered by Judge O'Brien on April 11, 1988. Also, Mr. Johns has moved to dismiss Judge O'Brien's Rule to Show Cause Order on the ground that this court lacks subject matter jurisdiction over the Rule 11 matter which, according to Mr. Johns, presents a nonjusticiable political question. A plethora of similarly frivolous motions were, thankfully, withdrawn by Mr. Johns at the oral argument which was held before this court on June 9, 1988 in St. Thomas.

## I. BACKGROUND

The present controversy finds its roots in a personal injury action prosecuted by the present defendants on behalf of Keithley Edwards and his wife Edith Edwards in 1984 against Born, Inc., arising out of injuries sustained by Mr. Edwards in the course of his employment at the Hess Oil Virgin Islands plant. See Edwards v. Born, Inc., 608 F. Supp. 580 (D.V.I. 1985), rev'd and remanded,

792 F.2d 387 (3d Cir. 1986). The personal injury action was settled by agreement between counsel at a pretrial conference on December 12, 1984. However, the plaintiffs refuted the settlement agreement reached by their attorneys. Judge O'Brien's decision to enforce the settlement agreement was reversed by the Court of Appeals and the case was remanded for an evidentiary hearing on certain agency issues. On remand, Judge O'Brien, again enforced the settlement agreement, this time on the theory that the plaintiffs had ratified the agreement after it was reached without their consent. See Edwards v. Born, Inc., No. 82-283, slip op. at 8 (D.V.I. October 10, 1986).

This action was commenced on December 11, 1986 by Keithley and Edith Edwards against their former attorneys. Plaintiffs allege that the attorneys were negligent in failing to secure a reasonable settlement of their claims and in accepting an unreasonable settlement offer without their consent. The case proceeded through the discovery and motions stages and was eventually set for trial on April 11, 1988.

On April 8, 1988, the Friday before the trial date, defendants hired a process server to serve a subpoena on Mr. Edwards to appear at a deposition scheduled for April 9, 1988. The process server located an individual who was identified as Keithley Edwards and served the subpoena on April 8, 1988. Mr. Edwards did not appear for the deposition and, in a motion filed by Mr. Johns on April 8, 1988, it was alleged that Mr. Edwards was "under doctor care in the states" and could not return until the late evening of April 11, 1988. Mr. Edwards did not appear for trial on April 11, 1988 despite his knowledge of the date of trial. Judge O'Brien dismissed Mr. Edwards' claim for failure to prosecute and, after this dismissal, Mr. Johns voluntarily dismissed the claim of Mrs. Edwards.

An investigation conducted by the attorneys for the defendants has revealed that Mr. Edwards was not in fact served on April 8, 1988. The process server mistakenly served a person identified as Keithley Edwards but, in fact, Mr. Edwards was in Aruba at the time and did not return to St. Croix until the evening of April 11, 1988. It appears, however, that Mr. Edwards' absence was not due to a need for medical treatment. In fact, no excuse has been offered for his absence on the date of trial.

After dismissing the action, Judge O'Brien issued his Rule to Show Cause pursuant to Rule 11 charging that Mr. Johns: (1) filed

numerous frivolous motions requesting that the trial of this matter be broadcast by the television media; (2) misrepresented his client's whereabouts and the reason for his absence in a motion to continue the trial date; and (3) filed other frivolous motions containing unfounded allegations and thoroughly lacking in support under existing law.

## II. DISCUSSION

### A. *The Motion For Relief From Judgment*

■ On behalf of plaintiffs, Mr. Johns has filed two papers, one entitled "Rule 60(b)(6)" and the other entitled "Legal Justification for 60(b) Relief." These filings, typical of the numerous filings by Mr. Johns in this matter, contain rambling narrative thoroughly irrelevant to the questions at issue. Rather than challenging the decision to dismiss for lack of prosecution, Mr. Johns continues to raise challenges to prior rulings made by Judge O'Brien that have nothing at all to do with the eventual decision to dismiss for lack of prosecution. Mr. Johns has presented no evidence or legal argument that would justify the extraordinary relief requested. The motion will be denied.

### B. *Section 541—Attorneys' Fees*

■ Defendants Groner and Holt each seek an award of attorneys' fees pursuant to 5 V.I.C. § 541. Section 541 provides for the court to award attorneys' fees to the prevailing party in a lawsuit. The amount of the award need not fully compensate the prevailing party, but is intended as reasonable compensation for maintenance of the action. See Durgah v. Moolenaar, 21 V.I. 244, 251 (1985). Defendants have submitted affidavits in compliance with the requirements set forth in Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1969). Attorney Groner seeks an award of $30,223.75 for attorney's fees and $2,028.95 for costs. Defendant Holt seeks an award of $19,698.50 for attorneys fees and costs.

■ A review of the four volume clerk's file in this case reveals that the amount of fees requested is not excessive. The attorneys for the defendants were required almost constantly to respond to the wildly absurd filings generated by Mr. Johns. In these circumstances, it seems to me only appropriate to assess fees and

costs in favor of the prevailing parties and against the plaintiffs. Accordingly, I will grant the defendants' motions under § 541.

## C. *Defendants' Rule 11 Motions*

The defendants, Groner and Holt, move jointly for sanctions pursuant to Rule 11. In support of the motion, defendants point to the numerous vexatious and nonsensical motions filed by Mr. Johns in this matter. Most notably, Mr. Johns filed motions requesting that the trial be broadcast by the television media. The initial motion contained no citation to supporting legal authority and contained no attempt to distinguish or challenge the legion of cases supporting prohibition of the broadcast media from televising court proceedings. See, e.g., Westmoreland v. Columbia Broadcasting System, Inc., 752 F.2d 16 (2d Cir. 1984); United States v. Hastings, 695 F.2d 1278 (11th Cir. 1983); Combined Communications Corp. v. Finesilver, 672 F.2d 818 (10th Cir. 1982). The motion contained no articulated challenge to the applicable actions of the Judicial Conference of the United States or the Code of Judicial Ethics. Canons of Judicial Conduct for United States Courts, Canon 3A(7); Recommendation D of the Judicial Conference of the United States, 87 F.R.D. 535–36 (1980).

Despite the court's denial of the initial motion, Johns characteristically remained committed to seeking broadcast rights and, again without reference to any legal authority, sought reconsideration of the court's ruling. The motion was denied. Mr. Johns was undaunted. A second motion for reconsideration was filed challenging the denial of broadcast rights as "unconstitutional" in some unarticulated sense. The motion was denied. Johns persevered. The third and final motion requested reconsideration or, in the alternative, immediate certification of the issue to the United States Supreme Court. Reconsideration was again denied and the request for "certification" appears to have been ignored as nonsensical.

In addition to the above-referenced broadcast motions, Johns continuously filed other frivolous motions containing endless inane assertions that the defendants and their attorneys conspired with the trial judge "in hiding the true facts of this case." Motion for Reconsideration For Broadcasting Trial, at 3. Many of Johns' filings include exhibits comprised of political cartoons the relevance of which are neither apparent nor explained. He routinely sends courtesy copies of his filings to President Ronald Reagan, members of the United States Senate, and foreign leaders such as Prime

Minister Yitzhak Shamir and General Secretary Mikhail Gorbachev. His filings rarely contain any legal argument and almost never contain reference to appropriate legal authority. Often, his filings contain bizarre references to international political affairs. In his filing entitled "Closing Argument Against Contempt and Disbarment," Johns admits to a "Mesiah (sic) complex" and explains:

> Historically, the human brain was believed to function according to classical physics principles. (cause and effect) With the recognition of quantum physics came the awareness that human consciousness functioned according to quantum physics principles.
>
> The most notable similarity is the Third Law of Thermodynamics. (Approaching 3 degrees absolute zero unexplainable chaos precipitates collective cohesion) As you slow mental activity one can reach the field of absolute knowledge. Noticeably missing from this human functioning assertion is whether "unexplainable chaos" occurs. Some associate this concept with a self-fulfilling prophecy i.e. Armagedon. A caveat to the characterization of "unexplainable chaos" is that how something is observed is dependent on the consciousness of the observer. ex: light: particle/wave.
>
> If one accepts God's promise of salvation, then setting a course to achieve that objective is paramount. A fundamental procedure one needs to adopt in moving forward to this goal is acknowledgement of mistakes. This correction process is commonly referred to as the atonement. The question in my mind was whether one could accellerate (sic) that process toward perfection. Why linger in hell when you could be in heaven.

Closing Argument Against Contempt and Disbarment, at 4–5. Johns goes on to express his dissatisfaction with Judge O'Brien's refusal to engage in the process of "atonement" during this case. His argument includes references to Henry Kissinger and "world stability"—Marberry (sic) v. Madison and the "abortion issue"—Prime Minister Yitzhak Shamir and the Iran/Contra scandal—START and S.D.I.—Senator Sam Nunn, the Koran, and culminates in a final statement: "War must end, giving way to understanding and eventually oneness. Can God's promise not be fulfilled? Unlikely!"

For Mr. Johns, the litigation process provides a theater in which he can orchestrate his clashes with the worldwide forces of evil. His antics have transformed this otherwise simple cause into a colossal waste of judicial resources. His conduct caused defendants to encounter tremendous legal fees. It would appear that Rule 11 sanctions are clearly in order.

██ The law in this circuit is absolutely clear that the test in determining the propriety of an attorney's conduct under Rule 11 is objective. See Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987). This is so because "the 1983 revision of Rule 11 was designed to prevent abuse caused not only by bad faith, but by negligence and, to some extent, by professional incompetence." Id. Mr. Johns' conduct would appear to meet two of the three criteria, bad faith and incompetence. Bad faith by reason of his repeated refusal to accept the court rulings, and incompetence because his argument and briefs in support of his position were irrelevant and irrational. I conclude that Mr. Johns' conduct in this litigation violated Rule 11 and therefore the joint motion of the defendants will be granted.

To the extent that Judge O'Brien's Rule to Show Cause Order is premised upon the filing of frivolous motions, I hold, for the reasons articulated above, that sanctions are appropriate. To the extent, however, that the Rule was premised upon the allegation that Mr. Johns misrepresented his client's availability for trial and his whereabouts, it appears that a subsequent investigation by counsel has shown that the premise was based upon misinformation supplied by a process server. The sanctions that I impose, therefore, are based upon the filing of vexatious and frivolous motions only.

### D. *The Appropriate Sanctions*

The Third Circuit pointed out that among the possible sanctions is requiring the offending lawyer to pay all or part of the adversary's counsel fees incurred as a result of the violation. See Gaiardo, 835 F.2d at 482. This is consistent with 28 U.S.C. § 1927 which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

■ Accordingly, I will enter an order directing Mr. Johns personally to pay that part of the costs, expenses and attorney's fee awarded to defendants which are attributable to Mr. Johns' violation of Rule 11.

■■ Mr. Johns' motion to dismiss the rule on jurisdictional grounds will be denied. This matter does not present a nonjusticiable political question. Mr. Johns' motion for Rule 11 sanctions against Gordon Rhea will also be dismissed as frivolous.

## ORDER

AND NOW, this 23 day of FEBRUARY, 1989, upon consideration of the various post-judgment motions filed by the parties and the Rule to Show Cause entered by Judge O'Brien, it is hereby

## ORDERED

that:

1. Defendant Gerald Thomas Groner's Motion for Attorneys' Fees and Costs is GRANTED and plaintiffs are to compensate Defendant Groner in the amount of $32,252.70.
2. Defendant Joel Holt's Motion for Attorneys' fees and Costs is GRANTED and plaintiffs are to compensate Defendant Holt in the amount of $19,698.50.
3. Plaintiffs' Attorney Randall Johns' Motion to Dismiss Judge O'Brien's Rule to Show Cause Order is DENIED.
4. Rule 11 sanctions are hereby IMPOSED upon Randall Johns and Mr. Johns is hereby ORDERED to pay the counsel fees, costs and expenses awarded to the defendants under paragraphs 1 and 2 hereof to the extent that the said counsel fees, costs and expenses are attributable to Mr. Johns' violations of Rule 11. The defendants shall file affidavits identifying such counsel fees, costs and expenses within 15 days of the date of this order. Randall Johns shall respond within 30 days of the date of this order.
5. Plaintiffs' Motion for Relief from Judgment under Rule 60(b)(6) is DENIED.
6. Plaintiff's motion for Rule 11 sanctions is DENIED.